UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-21399-Civ-GOLD
MAGISTRATE JUDGE P.A. WHITE

BEN E. SMITH,                          :

    Petitioner,                    :

v.                                     :          REPORT OF
                                      MAGISTRATE JUDGE

JAMES R. McDONOUGH,                    :

    Respondent.                    :
_____

## I. Introduction

Ben E. Smith, a state prisoner currently confined in Dade Correctional Institution at Florida City, Florida, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 in this Court, attacking the constitutionality of his convictions entered in Case No. 99-26298 in the Circuit Court of the Eleventh Judicial Circuit of Florida at Miami-Dade County.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of the petition with supporting memorandum of law and attached exhibits, the Court has the petitioner's response to an order regarding the limitations period, the respondent's responses to an order to an order to show cause and supplemental order to show cause with multiple exhibits, and the petitioner's reply to the respondent's initial response.

## II. Claims

Smith raises the following grounds for relief:

1.  He received ineffective assistance of trial counsel, because his lawyer failed to file a motion to suppress his involuntary confession.

2.  He received ineffective assistance of counsel, because his lawyer failed to conduct a proper investigation into the facts of the case and contest the autopsy report prepared by a pathologist who had been deemed incompetent.

3.  The state presented knowingly false and perjured testimony when Dr. Hyma testified that Dr. Blaise had been terminated because he failed to pass the final exam, and Dr. Hyma's testimony regarding the autopsy report prepared by Dr. Blaise was improper hearsay admitted in violation of his Confrontation Clause rights.

4.  The trial court's jury instruction on the forcible felony exception to the justifiable use of deadly force when he had not been separately charged with a forcible felony (i.e., aggravated battery) resulted in negating his defense, thereby violating his due process rights and depriving him of a fair trial.

### III. <u>Procedural History</u>

Smith was charged by indictment with first degree murder with a firearm (Count I), unlawful possession of a firearm by a convicted felon (Count II), unlawful possession of a firearm while engaged in a criminal offense (Count III), aggravated assault with a firearm (Counts IV and V), and attempted first degree murder (Count VI). (DE# 13; App. A). On Smith's motion, the possession of a firearm by a convicted felon charge was severed from the other counts. Also, before trial, the state entered a <u>nolle prosequi</u> as to the two counts of aggravated assault with a firearm and the attempted first degree murder charge. Smith proceeded to trial before a jury on the remaining offenses. After jury trial, he was convicted of the lesser included offense of second degree murder with a firearm and possession of a firearm during the commission of a felony. (DE# 13; App. B, C). Smith was sentenced as an habitual

2

violent felony offender to various terms of imprisonment and minimum mandatory terms of incarceration, including life. (DE# 13; App. D). The state then entered a <u>nolle prosequi</u> as to the earlier severed count of Possession of a Firearm by a Convicted Felon. Smith prosecuted a direct appeal from his convictions, raising a claim unrelated to this federal proceeding. The Florida appellate court affirmed Smith's convictions and sentences in a <u>per curiam</u> decision without written opinion. <u>Smith v. State</u>, 873 So. 2d 1231 (Fla. 3 DCA 2004).

Smith also pursued postconviction relief, filing in the trial court a <u>pro se</u> motion pursuant to <u>Fla.R.Crim.P.</u> 3.850, raising the identical claims of ineffective assistance of trial counsel raised here and a portion of the ground presented here as claim three as well as additional unrelated grounds for relief. (DE# 13; App. G). After the state had filed its response, the trial court summarily denied Smith's motion, finding the claims meritless. (DE# 13; App. H, I). The trial court's ruling was <u>per curiam</u> affirmed on appeal in a decision without written opinion. <u>Smith v. State</u>, 907 So. 2d 539 (Fla. 3d DCA 2005). Smith next filed in the state appellate court a <u>pro se</u> state petition for writ of habeas corpus with supporting exhibits, alleging that he received ineffective assistance of appellate counsel because his lawyer failed to raise on direct appeal the issue of whether the trial court erred in instructing the jury on the forcible felony exception to self-defense and thereby effectively negated his only defense. (DE# 13; App. L). The state filed a thorough and thoughtful response, essentially asserting that no fundamental error occurred because Smith had not been entitled to a self-defense instruction as a matter of law where the facts showed that no imminent danger remained when the fatal shots were fired. (DE# 13; App. M). The Florida Third District Court of Appeal denied the petition without

3

explanation. Smith v. State, 936 So. 2d 579 (Fla. 3 DCA 2006).
While proceedings not related to this federal petition were pending
in the state court, Smith filed the instant petition for writ of
habeas corpus pursuant to 28 U.S.C. §2254.[1]

IV. Threshold Issues-Timeliness, Exhaustion and Procedural Bar

     The respondent asserted in his initial response to the order
to show cause that the instant petition was subject to dismissal as
time-barred pursuant to 28 U.S.C. §2244(d)(1)-(2). This assertion
has since been rejected by the undersigned, and the respondent was
therefore ordered to file a supplemental response, addressing on
the merits the claims presented in the petition and any other
relevant procedural arguments. See Supplemental Order to Show
Cause. (DE# 14). The respondent has filed a supplemental response
in which he correctly asserts that claims one, two and three, save
a possible Confrontation Clause violation claim presented in ground
three, of the instant petition have been properly exhausted before
the state courts. See 28 U.S.C. §2254(b)(1) and (b)(1)(A)(A state
prisoner's habeas corpus petition "shall not be granted unless it
appears that----the applicant has exhausted the remedies available
in the courts of the State....").[2] The respondent has addressed on

_____

     [1]While his state habeas corpus proceedings were pending, Smith filed in the
trial court a Motion to Correct Illegal Sentence pursuant to Fla.R.Crim.P. 3.800,
claiming that his sentences were violative of his protection against double
jeopardy. (DE# 13; App. M). The trial court summarily denied the motion (DE# 13;
App. N), and the denial was affirmed by the appellate court. See Smith v. State,
957 So.2d 1198 (Fla. 3 DCA 2007).

     [2]An applicant's federal writ of habeas corpus will not be granted unless the
applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c). A claim
must be presented to the highest court of the state to satisfy the exhaustion of
state court remedies requirement." O'Sullivan v. Boerckel, 526 U.S. 838 (1999);
Richardson v. Procunier, 762 F.2d 429, 430 (5 Cir. 1985); Carter v. Estelle, 677
F.2d 427, 443 (5 Cir. 1982), cert. denied, 460 U.S. 1056 (1983). A petitioner is
required to present his claims to the state courts such that they are permitted
the "opportunity to apply controlling legal principles to the facts bearing upon
[his] constitutional claim." Picard v. Connor, 404 U.S. 270-275-77 (1971).
Exhaustion is ordinarily accomplished on direct appeal. If not, in Florida, it
may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its

the merits all exhausted claims. As to any Confrontation Clause violation and the claim presented here as ground four, the respondent asserts that these claims have not been properly exhausted in the state courts. For the reasons provided below in the discussion of the individual claims raised, the respondent's exhaustion argument is correct and Smith is not entitled to review on the merits of these unexhausted claims in that they are procedurally barred from federal habeas corpus review.

## V. <u>Standard of Review</u>

Turning to a consideration of Smiths's federally cognizable claims, Section 104(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §2254(d), provides that a prisoner in state custody may not be granted a writ of habeas corpus for any claim that was adjudicated on the merits in state court, unless the decision of the state court was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" to the State court.  28 U.S.C. §2254(d)(1), (2). <u>See</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000).  <u>See also</u>, <u>Fugate v. Head</u>, 261 F.3d 1206, 1215-16 (11 Cir. 2001).

A state court decision is "contrary to" the Supreme Court's clearly established precedent within the meaning of §2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the

denial; <u>Leonard v. Wainwright</u>, 601 F.2d 807, 808 (5 Cir. 1979), or, in the case of a challenge to a sentence, by the filing of a Rule 3.800 motion, and an appeal from its denial. <u>See</u> <u>Caraballo v. State</u>, 805 So.2d 882 (Fla. 2 DCA 2001). A claim of ineffective assistance of appellate counsel must be raised by petition for writ of habeas corpus in the appropriate district court of appeal.   <u>State v. Dist. Ct. of Appeal, First Dist.</u>, 569 So. 2d. 439, 442 n.1 (Fla. 1990).

state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005); <u>Williams v. Taylor</u>, 529 U.S. at 405-06. In the habeas context, clearly established federal law refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. <u>Hall v. Head</u>, 310 F.3d 683, 690 (11 Cir. 2002) <u>citing</u>, <u>Williams</u>, 529 U.S. at 412. However, in adjudicating a petitioner's claim, the state court does not need to cite Supreme Court decisions and the state court need not even be aware of the Supreme Court cases. <u>See</u> <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002); <u>Parker v. Secy of Dept. of Corrections</u>, 331 F.3d 764, 775-76 (11 Cir. 2003). So long as neither the reasoning nor the result of the state court decision contradicts Supreme Court decisions, the state court's decision will not be disturbed.[3] <u>Id</u>. Further, a federal court must presume the correctness of the state court's factual findings. <u>See</u> 28 U.S.C. §2254(e)(1); <u>Putman v. Head</u>, 268 F.3d 1223, 1241 (11 Cir. 2001), <u>cert</u>. <u>denied</u>, 537 U.S. 870 (2002).

VI. <u>Facts</u>

The facts of this case as revealed by the evidence admitted at trial are as follow.[4] The victim, Nathaniel Williams, and Smith

---

[3]The Eleventh Circuit has continued to stress the importance of the standard established in Section 2254(d), stating that the AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." <u>Crawford v. Head</u>, 311 F.3d 1288, 1295 (11 Cir. 2002). Specifically, the AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." <u>Crawford</u>, <u>supra</u> at 1295, <u>quoting</u> <u>Bell v. Cone</u>, 535 U.S. 685 (2002). <u>See also</u> <u>Hawkins v. Alabama</u>, 318 F.3d 1302 (11 Cir.2003)(discussing AEDPA's limits on federal court authority).

[4]For a more detailed recitation of the facts of this case with citations to the trial transcript, see the initial brief filed in the direct appeal proceeding and the state's response in the state habeas corpus proceeding.

attended a party at the home of Tonya Cochran. During the party, Smith engaged in a verbal altercation with Williams and one of Williams' friends, William Boyd. During the dispute, Williams pulled out a firearm and pointed it at Smith. Other guests at the party intervened and separated Williams and Boyd from Smith. Williams and Boyd were then placed into one car and driven away from the scene by Sandera Cochran while Smith was placed into a different car and driven away by his sister who had also attended the party. No shots were fired during the dispute. Approximately twenty to thirty minutes later, Smith returned to the party and this time he brought a gun with him. Smith was angry about the earlier altercation and was heard saying, "when [I] see him [I'm] going to kill him. [I'm] going to kill 'em." These statements were made in reference to Williams and Boyd.

Several hours later, Boyd telephoned the house to inquire whether he could return to the party. Although he was told not to return, he and Williams returned anyway. Within minutes of their return, they discovered that they could not obtain any more alcohol, so they decided to leave. After Boyd had returned to his car parked in front of the house and while Williams was on his way back to the car, Smith moved to the front of the car and pulled out his gun. The disc jockey at the party also had a gun and told Smith, "I got your back." A fire fight ensued, with both sides shooting at each other. Williams was shot three times below the knee cap in both legs, and both legs were fractured or broken below the knee. These were not fatal wounds. Williams fell to the ground and while doing so, he threw his gun away into the middle of the street and said, "I'm hit," and "All right, all right man, I give." Williams, unable to walk or run away, attempted to drag himself by

(Initial Brief of Appellant at 2-6; Response to Order to Show Cause at 2-5)(DE# 13; App. E, L). <u>See also</u> Trial Transcript. (DE# 20).

the arms away from the conflict. Smith then retrieved the gun that Williams had discarded and, as he walked towards the unarmed victim, he reloaded his own gun. An eyewitness attempted to intervene and told Smith, "No, don't do it. Don't do it." Smith pushed the woman away, saying "No, he gonna' talk. He gonna' talk. I got to kill him." He further stated, "I ain't through yet." Smith then walked right up to the victim and shot him three times in the head and neck. Two of these shots went instantly into the victim's brain, incapacitating him. These wounds proved fatal. During his initial telephone conversation with Detective Santos, Smith stated that he had acted in self-defense and had agreed to turn himself in. A few days later when Smith did not voluntarily surrender, he was arrested. After his arrest, Smith gave a detailed tape-recorded statement to Detective Santos confessing his involvement in Williams' murder.

## VII. Discussion

### A. Claims One and Two

Smith alleges that he received ineffective assistance of trial counsel for two reasons. To prevail on a claim of ineffective assistance, a petitioner must demonstrate both that his attorney's efforts fell below constitutional standards, and that he suffered prejudice as a result.[5] Strickland v. Washington, 466 U.S. 668

---

[5]When assessing a lawyer's performance, "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Chandler v. United States, 218 F.3d 1305 (11 Cir. 2000)(en banc), cert. denied, 531 U.S. 1204 (2001). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within "the wide range of professionally competent assistance." Van Poyck v. Florida Dept. of Corrections, 290 F.3d 1318, 1322 (11 Cir.), cert. denied, 537 U.S. 812 (2002), quoting, Strickland v. Washington, 466 U.S. 668, 690. Review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit

(1984). Scrutiny of an attorney's performance is highly deferential. Reviewing courts will not second-guess strategic decisions; rather, the attorney's performance is evaluated in light of all the circumstances as they existed at the time of the conduct, and is presumed to have been adequate. <u>Strickland v. Washington</u>, 466 U.S. at 689-90. Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. <u>Id</u>. at 690-91. Smith presented the identical claims of ineffective assistance of trial counsel to the state courts in postconviction proceedings. For the reasons expressed immediately below, the trial court's determination that Smith was not entitled to postconviction relief on his claims of ineffective assistance of counsel, which decision was affirmed on appeal, was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[6] Relief must therefore be denied pursuant to 28 U.S.C. §2254(d).[7] <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).

---

of hindsight."); <u>Atkins v. Singletary</u>, 965 F.2d 952, 958 (11 Cir. 1992). A claim of ineffective assistance is a mixed question of law and fact. <u>Strickland</u>, 466 U.S. at 698. The court "may decline to reach the performance prong of the ineffective assistance test if convinced that the prejudice prong cannot be satisfied." <u>Waters v. Thomas</u>, 46 F.3d 1506, 1510 (11 Cir. 1995)(<u>citing</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 697 (1984).

[6]The appellate court's decision affirming the denial of Smith's Rule 3.850 motion without written opinion constitutes an "adjudication on the merits," and is thus entitled to deference under the AEDPA for purposes of subsequent federal habeas corpus review. <u>Wright v. Secretary for Dept. of Corrections</u>,278 F.3d 1245 (11 Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003). Smith is only entitled to relief if the state appellate court's rejection of his claims was directly contrary to, or was an unreasonable application of, clearly established federal law. <u>Id</u>. at 1253-56. <u>See also</u> <u>Van Poyck v. Florida Dept. of Corrections</u>, 290 F.3d 1318, 1325 (11 Cir. 2002). For the reasons stated herein, the appellate court's decision affirming the denial of Smith's Rule 3.850 motion on the subject issues was not unreasonable, and he is therefore not entitled to relief in this federal proceeding.

[7]It should be noted that the trial court judge presiding over the trial proceedings was the same judge who presided over the subject state postconviction proceedings. Where the judge presiding over the trial proceedings is the same

Smith claims in ground one that his lawyer rendered ineffective assistance because he failed to file a motion to suppress his confession. Specifically, Smith alleges that his confession had been involuntarily given in that the police beat him with telephone books, threatened him that his sister would be arrested if he did not cooperate, and did not properly advise him of his right to have counsel present during questioning. This claim is clearly meritless, as refuted by the record.

Review of the trial transcript reveals that before the jury selection process commenced, and after Smith had been sworn, the court made various inquiries of Smith, which included the question whether he had been satisfied with the representation received from counsel thus far regarding the discovery conducted, trial preparation, the filing of pretrial motions, etc. (Trial Transcript at 8-9)(DE# 20). In response, Smith indicated that he had wanted counsel to pursue a motion to suppress his confession and he was not sure if counsel had done so. Id. at 9. Trial counsel Soven then stated that he did not and a discussion regarding the filing of such a motion ensued between prosecutor Kelly, defense counsel and the court. Id. at 9-12. A pertinent portion of that discussion is as follows:

> MR. SOVEN:[8]      I have taken the deposition of the arresting
>                    officer as well as the officers and the
>                    officers who were present during [Smith's]
>                    confession when he voluntarily went to the

---

judge presiding over the post conviction proceedings, the presumption of correctness afforded the findings of fact of the state court is particularly strong. See May v. Collins, 955 F.2d 299, 314 (5 Cir.), cert. denied, 504 U.S. 901 (1992). As indicated, the trial court's decision in the Rule 3.850 proceeding was affirmed on appeal.

[8]Although the trial transcript indicates that prosecutor Kelly made the initial remarks, it is apparent from review of the entire discussion that, these statements, instead, were made by trial counsel Soven and the misidentification of the speaker in the transcript is a typographical error.

police station and spoke to them several days after the incident. It was my view that there was no legal basis to suppress the statement based upon having listened to the tape, having read the transcript, having taken the depositions of the arresting officers.

Several months ago, [Smith] mailed to me his own version in his own handwriting, a motion to suppress the statement, confession that he gave on the grounds that it was essentially beaten from him. That he was hit with telephone books or that he was abused or that he (sic) was not willing, voluntarily knowing statement. I've decided not to pursue that motion because there was in my view no legal basis for it whatsoever. And I believe that a motion to suppress like any other motion is a trial strategy or something that an attorney has to make a decision to do. And I decided that it (sic) was not a valid basis for it....

THE COURT:      Okay.

MR. KELLY:      Judge, I think that we need to hear the motion or at least stipulate that Miranda was read. Stipulate that on the tape itself the Miranda colloquy was done. The colloquy at the end of the statement, they ask [Smith] was he treated fairly. He says yes, he was treated fairly, given the chance for food and drink, go to the bathroom. Then if [Smith] wants to offer any testimony that is different, offer an independent motion to suppress, then it would be presented to the jury....

Id. at 10-11. It was then decided that any proceeding regarding a motion to suppress would be brought before the court after the jury selection process had concluded. Id. at 11-2.

As agreed, after the jurors had been selected but before they were sworn, the trial court announced that it was ready to proceed with the motion to suppress. Id. at 280. Defense counsel advised the court that, after further discussion with Smith, Smith had conceded that the statement given to the police with lawful and

11

that the defense would not challenge the confession as involuntarily made in that there was not sufficient evidence to substantiate an allegation that the confession had been coerced. Id. Smith was then sworn and the trial court asked him whether it was true that he had again discussed with counsel the filing of a motion to suppress and that he was now willing to withdraw any motion to suppress. Id. at 281. Smith unequivocally responded affirmatively. Id. The court went on to ask whether Smith was also waiving any jury instruction regarding the voluntariness of his statement and Smith again responded, "Yes, sir." Id. at 282.

The voluntariness inquiry turns on whether the confession was the product of a free and deliberate choice rather than intimidation, coercion or deception, see Moran v. Burbine, 475 U.S. 412, 421 (1986), and focuses on police overreaching, see Colorado v. Connelly, 479 U.S. 157, 170 (1986). Both of these inquiries are based upon the totality of the circumstances. See Moran, 475 U.S. at 421. Here, the record does not support Smith's allegation that his confession was coerced. See generally, Waldrop v. Jones, 77 F.3d 1308, 1316 (11 Cir. 1996)(holding that court must assess totality of the surrounding circumstances-both the characteristics of the accused and details of interrogation)(citations omitted). The record demonstrates that trial counsel investigated the circumstances surrounding the confession, including deposing the interrogating officer. Thus, it is apparent from the record that after appropriate investigation into the facts of the case and review of applicable law, trial counsel determined that Smith's confession was not made in violation of his constitutional protections and, therefore, elected not to pursue a motion to suppress. Further, review of the record indeed reveals no lawful

challenge to Smith's confession.[9] As properly determined by the state courts, Smith had failed to demonstrate that counsel's performance was deficient for failing to pursue a meritless motion to suppress in that, other than Smith's self-serving assertions, nothing in the record suggests any impropriety by the police and that he was coerced into confessing to the offenses.[10] It is well settled that counsel has no duty to raise issues which have little or no chance of success. See generally, Chandler v. Moore, 240 F.3d 907, 917 (11 Cir. 2001)(counsel is not ineffective for failing to raise a non-meritorious objection); Card v. Dugger, 911 F.2d 1494, 1520 (11 Cir. 1990)("Counsel cannot be labeled ineffective for failing to raise issues which have no merit."). See also Teffeteller v. Dugger, 734 So.2d 1009, 1023 (Fla. 1999)("Trial

---

[9]The testimony of the interrogating office and the transcript of the tape recorded statement indicates that Smith was advised of his constitutional rights, he understood those rights, and he waived those rights by executing the written waiver form. (Trial Transcript at 520-32, 533-71). Other than Smith's wholly conclusory self-serving assertions in this habeas corpus proceeding, there is no support whatever in the record that Smith's statement to the police was not knowingly and voluntarily made and was instead the product of some sort of coercive or overbearing police tactics. Absent supporting evidence in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his pro se petition to be of probative value. Ross v. Estelle, 694 F.2d 1008, 1011-12 (5 Cir. 1983). Accordingly, a habeas petitioner's self-serving testimony after the fact is in and of itself insufficient. Siao-Pao v. Keane, 878 F.Supp. 468, 472 (S.D.N.Y. 1995); see also, e.g., Panuccio v. Kelly, 927 F.2d 106, 109 (2 Cir. 1991)(stating that a defendant's testimony after the fact suffers from obvious credibility problems). In fact, as noted herein, the transcript of the recorded statement indicates that at the conclusion of the interview, Detective Santos asked Smith whether he had been treated well and treated fairly during the time at the police station and had been provided with the opportunity to use the bathroom and had been provided with food and drink, and Smith answered affirmatively to each question. (Transcript of Taped Statement)(Trial Transcript at 570-71).

[10]Specifically, the trial court in finding the subject claim meritless stated as follows:

> [Smith's] argument that his confession was coerced and that his lawyer failed to pursue a motion to suppress after being told that is without merit because [Smith] himself under oath agreed that his statement was not illegally obtained and agreed not to pursue the matter.

(Order Denying Motion for Post Conviction Relief at 1). The trial court's ruling was affirmed by the state appellate court. See Smith v. State, 907 So. 2d 539 (Fla. 3d DCA 2005).

counsel cannot be deemed ineffective for failing to raise meritless claims or claims that had no reasonable probability of affecting the outcome of the proceeding.").

Further, the record reveals that, as a matter of sound trial strategy, counsel elected not to suppress the confession, but rather keep the confession in evidence and use Smith's statement to support his theory of self-defense. At trial, state witness Tonya Cochran testified extensively about Smith's actions and his statements which she was able to see and hear from her position in the front yard of the house. (Trial Transcript at 305-74). State witness Sandera Cochran testified to events that occurred immediately before and during the shootout from her position in the car that the victims had arrived in. Id. at 378-408. Defense counsel acknowledged during closing argument that the description of the events testified to by the eyewitnesses did not differ materially from that given by Smith in his statement to the police. Id. 696. Defense counsel then went on to use the sworn confession to support Smith's theory of self-defense. Id. at 700-07. Counsel quoted extensively from the confession to argue that the victim had been the provoker and that Smith had been in fear for his life, a fear that he argued continued even after the victim had thrown away his gun and lay in the street. Id. Thus, without having to call Smith as a witness which would have revealed that he was a convicted felon and would have subjected him to forceful and potentially damaging cross-examination from the state, counsel was able to use Smith's own words to argue his theory of self-defense. Defense counsel's strategy was certainly reasonable under the circumstances of this case, not amounting to deficient

performance.[11] <u>Strickland</u>, <u>supra</u>. <u>See also</u> <u>Zakrewski v. McDonough</u>, 455 F.3d 1254 (11 Cir. 2006)(finding that Petitioner failed to show that trial counsel's decision not to file a motion to suppress evidence was a course no competent counsel would have taken under the circumstances).

Moreover, the record also indicates that counsel's decision not to pursue a motion to suppress was made after discussion with Smith, as indicated by Smith's affirmative responses at trial to the court's inquiries. In this case, Smith agreed with his attorney's strategy or, at the very least, acquiesced to defense counsel's strategic decision. Accordingly, defense counsel's action or, in this case, inaction, will not support a claim of ineffective assistance, as alleged by Smith. <u>Strickland</u>, <u>supra</u>. Finally, even if counsel's performance could in any way be deemed deficient, Smith has suffered no prejudice as a result of counsel's inaction. Smith is mistaken that without the confession he would have been acquitted. Contrary to Smith's assertions, the state's case in no way centered around his confession to the police, and there was more than sufficient evidence admitted at trial to support the convictions without Smith's confession. Eyewitness Tonya Cochran testified that Smith had walked up to the seriously wounded, but alive, Nathaniel Williams, while he was on the ground on his arms, attempting to get up, and fired more shots at Williams' head and

---

[11]Scrutiny of an attorney's performance is highly deferential, therefore, reviewing courts will not second-guess strategic decisions; rather, the attorney's performance is evaluated in light of all the circumstances as they existed at the time of the conduct, and is presumed to have been adequate. <u>Strickland</u>, 466 U.S. at 689-90. Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. <u>Id</u>. at 690-91. Even if in retrospect the strategy to pursue one line of defense over another appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it. <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1145 (11 Cir. 1983). Accordingly, tactical or strategic choices by counsel cannot support a collateral claim of ineffective assistance. <u>United States v. Costa</u>, 691 F.2d 1358 (11 Cir. 1982); <u>Coco v. United States</u>, 569 F.2d 367 (5 Cir. 1978).

neck, killing him. (Trial Transcript at 331-37). Smith admitted as much during his interview with Detective Santos. Id. at 560-61, 564. Smith is, therefore, not entitled to habeas corpus relief on ground one. See Strickland, supra.

Smith alleges in ground two that he received ineffective assistance of counsel, because his lawyer failed to conduct a proper investigation into the facts of the case and contest the autopsy report prepared by a pathologist who had been deemed incompetent. This claim too is unavailing, as refuted by the record.

The adequacy of a pretrial investigation turns on the complexity of the case and trial strategy.[12] The state called Dr. Hyma as a witness. (Trial Transcript at 593-641). At the time of trial, Dr. Hyma was employed as the Chief Medical Examiner for Miami-Dade County, Dr. Hyma had worked for the medical examiner's office for sixteen years, and he had conducted at least 3500 death investigations. Id. at 593-94. His testimony concerned the autopsy report which had been prepared by Dr. Joseph Blaise. Before going on to testify about the autopsy report and the cause of the victim's death, Dr. Hyma first testified that Dr. Blaise had been employed by the medical examiner's office as a fellow in the forensic pathologist training program and that he had been

---

[12]Effective assistance of counsel embraces adequate pretrial investigation. See McCoy v. Newsome, 953 F.2d 1252, 1262-63 (11 Cir. 1992) and cases cited therein. Accordingly, "[w]hen a lawyer fails to conduct a substantial investigation into any of his client's plausible lines of defense, the lawyer has failed to render effective assistance of counsel." Id. at 1263, quoting, House v. Balkcom, 725 F.2d 608, 615, 617-18 (11 Cir.), cert. denied, 469 U.S. 870 (1984). It is evident from the record that trial counsel did properly investigate the facts of the case and had investigated all possible defenses. Although counsel has no absolute duty to investigate particular facts or a certain line of defense, a complete failure to investigate may constitute deficient performance of counsel in some circumstances. See Crawford v. Head, 311 F.3d 1288, 1297 (11 Cir. 2002).

supervised by Dr. Ray Fernandez, an associate medical examiner with ten years experience who had left the office when he received a promotion to Chief Medical Examiner in Texas. Id. at 600-05, 610-11. The direct examination further revealed that Dr. Blaise had not successfully completed the fellowship training program, that he had received an incomplete, and that he did not receive his certification. Id. at 606. Dr. Hyma testified that the subject autopsy report had been prepared by Dr. Blaise early on in his term as a trainee in the medical examiner's office while he was being supervised by Dr. Fernandez. Id. at 609-11. Dr. Hyma testified that any errors or omissions that had been made by Dr. Blaise did not have an impact on his testimony at trial with regard to the instant case and that it was common for doctors to rely on the reports of other doctors. Id. at 597, 607.

Dr. Blaise then went on to testify that he conducted an independent review of the report, and he had compared the report with 160 photographs and various x-rays taken contemporaneously. Id. at 597, 606-07. Dr. Hyma testified that from his independent review he concluded that the report had been accurate and that based upon the photographs and report he reached his own conclusion that Nathaniel Williams had suffered six gunshot wounds, three below the waist and three above. Id. at 607-14. Dr. Hyma gave his professional opinion that the three bullet wounds to Nathaniel Williams' lower body, two of which broke each of Nathaniel's legs, were not fatal wounds, but would have rendered Nathaniel unable to walk or get up, though able to talk and to move his upper body. Id. at 623-25. Dr. Hyma testified that the fatal gunshot wounds were the ones to Nathaniel's head and skull, including one that passed through critical areas of his brain, and those wounds would have caused instantaneous death. Id. at 627-32, 638.

17

Thus, the jury was clearly aware from Dr. Hyma's direct testimony that Dr. Blaise had not successfully completed the fellowship program and that he had not performed in such a manner to qualify for certification as a forensic pathologist and counsel need not have questioned Dr. Hyma further on this issue. Apparently, trial counsel made a strategic decision that additional questioning on this issue would not have been beneficial to the defense since Dr. Hyma had unhesitatingly testified that the subject autopsy report was accurate and that Dr. Blaise had been supervised by an experienced medical examiner when preparing his report. The decision to cross-examine a witness and the manner in which it is conducted are tactical decisions "well within the discretion of a defense attorney." Fugate v. Head, 261 F.3d 1206, 1219 (11 Cir. 2001)(quoting Messer v. Kemp, 760 F.2d 1080, 1090 (11 Cir. 1985)). Trial counsel is not ineffective simply for failing to elicit other testimony from those that testified. Id. at 1220. Defense counsel's performance was, therefore, not deficient, as alleged in that there was no lawful basis for the exclusion of the autopsy report. As indicated above, counsel has no duty to raise issues which have little or no chance of success. See generally, Chandler v. Moore, 240 F.3d at 917; Card v. Dugger, 911 F.2d at 1520.

Further, even if counsel's performance in this regard could in some way be deemed deficient, Smith has not satisfied the second prong of Strickland, prejudice. Dr. Hyma's testimony was entirely consistent with testimony given by Tonya Cochran and consistent with Smith's own statements given to the police that Smith walked up to the seriously wounded, but alive victim, and fired shots that hit the victim in the head and neck, killing him. Id. at 331, 560-61, 564. Here, the cause of death was not in dispute and Smith admitted that the victim was unarmed at the time of the final round

18

of shots. Further, Dr. Hyma acknowledged during his testimony on direct examination that it was not possible for a medical examiner to determine what type of firearm was used to inflict any of the wounds, that this would have to be determined by a firearms examiner, and that bullet fragments were identified and sent to a firearms examiner. Id. at 620. During cross-examination, in an attempt to establish reasonable doubt regarding the shooters, Dr. Hyma was again questioned about the weapons used and similarly testified that he was unable to determine what type of weapon caused the several different wounds. Id. at 639-40. Thus, the transcript reveals that Smith's allegation that Dr. Hyma testified in a manner that could have misled the jury about which of the several individuals involved in the shootout were responsible for the victim's wounds is not accurate. Additionally, the newspaper articles submitted by the petitioner in support of his challenge to Dr. Blaise's performance do not indicate that counsel's performance was ineffective in that those other cases where Dr. Blaise's reports might have been deemed inaccurate have no bearing whatever in this case where experienced medical examiners have deemed the report accurate and reliable. Finally, Smith has failed to demonstrate that the outcome of the trial would have been different if counsel had sought to exclude the autopsy report from evidence and had been successful. Accordingly, as correctly determined by the state courts, Smith has failed to demonstrate that he received constitutionally ineffective assistance of trial counsel on this basis.[13] See Strickland v. Washington, supra.

_____

[13]Specifically, the trial court ruled as follows on this claim and a related claim:

> [Smith] argues that his lawyer was ineffective for failing to point out that the medical examiner who performed the autopsy was fired from incompetence. The argument has no merit because the M.E. who did testify informed the jury about the issue and, furthermore, the jury need not have relied on the autopsy findings in order to conclude that [Smith] was guilty in this case because he confessed

In sum, it is clear from the record when viewed as a whole that the petitioner received vigorous and able representation more than adequate under the Sixth Amendment standard. See Strickland v. Washington, 466 U.S. 668 (1984). Smith has failed to demonstrate that he was deprived of constitutionally effective assistance of counsel for the reasons alleged above. Id. It should be noted that besides self-defense, Smith also vigorously presented a defense of voluntary intoxication.[14] The defense was apparently successful in that Smith was found not guilty of the crime for which he was charged, first degree murder with a firearm, but of the lesser included offense of second degree murder with a firearm.

## B.  Claim Three

Smith essentially alleges in ground three that his convictions were the result of fraud, perjured testimony, false and fabricated evidence, and prosecutorial misconduct. Specifically, Smith

---

to every element of the crimes for which he was convicted of.

(Order Denying Motion for Post Conviction Relief at 1).

[14]The following excerpt from defense counsel's closing argument is illustrative of the defense:

Ben said that when he got there to the party was started and he had two beers. Then he had two glasses of gin. Then he had some more beer. Then he started drinking Hennessey. Then when he ran out of gin he started drinking EJ, which he described on the statement as a cognac type of drink and he continued when he went outside. He continued drinking outside. He was drinking the entire night. He was drunk. He was intoxicated.

If you find from the evidence that he was intoxicated from drinking alcohol, that he has to be capable of forming specific intent of first-degree premeditated murder, or you have reasonable doubt, that's all, reasonable doubt, then you must find Ben not guilty of the charge of first-degree murder. And there is reasonable doubt and only way is you must find that there's absolutely no doubt whatsoever, no doubt in your mind that he was not drunk and intoxicated.

*          *          *

And that's why this case then becomes a second-degree murder case to begin with.

(Trial Transcript at 747-48).

20

maintains that the state presented false evidence at trial regarding the reason for Dr. Blaise's termination with the medical examiner's office. Smith also appears to claim that testimony regarding the autopsy report from Dr. Hyma, a pathologist who had not prepared the report, was improper hearsay and admitted in violation of his Confrontation Clause rights.

Success on a claim of prosecutorial misconduct requires a showing that the conduct infected the trial with unfairness as to make the resulting conviction a denial of due process. <u>Greer v. Miller</u>, 483 U.S. 756, 765 (1987)(quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974)). The conduct must be examined to determine "whether, considered in the context of the entire trial, that conduct appears likely to have affected the jury's discharge of its duty to judge the evidence fairly." <u>United States v. Simtob</u>, 901 F.2d 799, 806 (9 Cir. 1990). The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986)(quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 642 (1974)). The Supreme Court has stated that "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." <u>Smith v. Phillips</u>, 455 U.S. 209, 219 (1982). Thus, the federal habeas court must determine whether the prosecutor's actions were so egregious that his misconduct amounted to a denial of constitutional due process. <u>Id</u>. Of course, a defendant is denied due process when a state knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. <u>Giglio v. United States</u>, 405 U.S. 150, 153 (1972); <u>Napue v. Illinois</u>, 360 U.S. 264, 269 (1959). To succeed in showing a due process violation from the prosecution's failure to disclose material exculpatory evidence,

Smith must establish that (1) evidence was suppressed, (2) the evidence was favorable to the defense, and (3) the evidence was material either to guilt or punishment. Brady v. Maryland, 373 U.S. 83, 87 (1963). Undisclosed evidence is material if there exists a reasonable probability that the result of the proceedings would have been different had the evidence been disclosed to the defense. See East v. Johnson, 123 F.3d 235, 237 (5 Cir. 1997).

The claim regarding perjured testimony and/or prosecutorial misconduct is meritless. The record does not support Smith's claim that Dr. Hyma testified falsely regarding Dr. Blaise's problems while working at the medical examiner's office. In the Rule 3.850 proceeding, the judge who was the same judge who had also presided over the trial court proceedings, found this claim meritless, stating as follows:

> [Smith] argues that Dr. Hyma, the substitute medical examiner who testified at trial, committed perjury and that his counsel was ineffective for not making the jury aware of this. The argument has no merit because the trial transcript conclusively shows that Dr. Hyma did not commit perjury and that the newspaper article [Smith] relies upon for making his arguments does not contain the information that [Smith] asserts that it does.

(Order Denying Motion for Post Conviction Relief at 1).

The state trial and appellate courts properly rejected Smith's claim presented here as ground three. There is absolutely no evidence to support Smith's contention that the state presented false evidence. See Trial Transcript at 593-641. As indicated above, Dr. Hyma merely testified that Dr. Blaise had not successfully completed the fellowship program and that the Miami-Dade Medical Examiner's Office had found him not qualified for certification. Id. at 606. Dr. Hyma never testified that the cause for Dr. Blaise's termination from the program was due to a failed

final examination, as Smith alleges. Since the record does not support Smith's claim of perjury or prosecutorial misconduct in that Smith has failed to demonstrate that the prosecutor knowingly presented false testimony and since Smith has not demonstrated that the actions of the prosecutor infected the trial with unfairness, Smith has not been denied constitutional due process. Further, there was no Brady-violation here in that the evidence regarding Dr. Blaise's competence as a medical examiner, or lack thereof, and his credibility as such was not suppressed by the state. Even if not revealed by the prosecutor to the defense before trial, as indicated by Smith in his petition, Smith himself advised counsel of the issues surrounding Dr. Blaise as reported in the local newspaper. The state is not required to furnish a defendant with exculpatory evidence that is fully available to the defendant or that could be obtained through reasonable diligence. See Blackmon v. Scott, 22 F.3d 560, 564-65 (5 Cir.), cert. denied, 513 U.S. 1060 (1994).

Further, even if the state did not reveal all possible evidence regarding Dr. Blaise's performance while employed at the medical examiner's office, it cannot be said that the subject evidence (i.e., the firing of Dr. Blaise) was material in that the result of the trial proceeding would have been different. Here, the jury was clearly apprised of the fact that Dr. Blaise had not successfully completed the fellowship program, that he received an incomplete and that he was not certified. (Trial Transcript at 606). Further, it was also revealed that Dr. Blaise's work was supervised by one experienced medical examiner and reviewed by another. The qualifications of the other medical examiners have not been questioned, rendering the results of the report credible and reliable. No constitutional error occurred here. See Giglio, 405 U.S. at 154; accord, Bagley, 473 U.S. at 678 (constitutional error

23

occurs only if the disputed evidence is material in the sense that its suppression undermines confidence in the outcome of the trial). Since the rejection of the claim is not in conflict with clearly established federal law or based on an unreasonable determination of the facts, the state court determinations should stand. 28 U.S.C. §2254(d)(1); <u>Williams v. Taylor</u>, <u>supra</u>.

Smith further claims in this federal petition that his constitutional rights pursuant to the Confrontation Clause were violated when Dr. Hyma was permitted to testify regarding the autopsy report since he was not the medical examiner who had prepared the report. In support of his assertion Smith cites to <u>Crawford v. Washington</u>, 541 U.S. 36 (2004)(permitting the use of testimonial hearsay statements only when the defendant has had prior opportunity to cross-examine the unavailable declarant). As correctly asserted by the respondent, this claim was never presented in the state courts, rendering it unexhausted. Since there are no procedural avenues available to Smith to now exhaust his constitutional challenge at the state level, the claim would be procedurally barred under Florida law.[15] Because claim two is now

---

[15]Although the state has not asserted the procedural bar argument with regard to the <u>Crawford</u>-claim, this Court has the power to raise the procedural bar <u>sua</u> <u>sponte</u>. <u>Esslinger v. Davis</u>, 44 F.3d 1515, 1528 (11 Cir. 1995); <u>Magouirk v. Phillips</u>, 144 F.3d 348, 358-60 (5 Cir. 1998). Generally, before applying a procedural bar, the Court first affords the petitioner the opportunity to show cause and prejudice for the default, or that a fundamental miscarriage of justice would result if the court fails to consider the claim. <u>Magouirk v. Phillips</u>, 144 F.3d 348,358-60; <u>Esslinger v. Davis</u>, 44 F.3d 1515, 1528. <u>See also</u> <u>Trest v. Cain</u>, 522 U.S. 87, 89(1997)(holding that a court of appeals reviewing a district court's habeas corpus decision is not "required" to raise the issue of procedural default <u>sua</u> <u>sponte</u>); <u>United States v. Warner</u>, 23 F.3d 287, 291 (10 Cir. 1994)(holding that court may raise procedural bar <u>sua</u> <u>sponte</u>, but must afford movant opportunity to respond before making procedural bar determination). The Fifth Circuit in <u>Magouirk</u> did not impose any <u>per</u> <u>se</u> rule requiring any particular form of notice or additional argument in cases where the Court raises procedural bar <u>sua</u> <u>sponte</u>. <u>Magouirk v. Phillips</u>, 144 F.3d at 359. <u>See also</u> <u>Trest v. Cain</u>, 522 U.S. at 91("We do not say that a court must always ask for further briefing when it disposes of a case on a basis not previously argued"). In this case, the undersigned's Report and Recommendation entered this date clearly places Smith on notice that procedural default is dispositive in this habeas corpus proceeding

irrevocably barred from consideration by the state courts,[16] this
Court may deem the claim procedurally barred as well.[17] <u>Kelley v.
Secretary for Dept. of Corr</u>., 377 F.3d 1317, 1351 (11 Cir.
2004)("[W]hen it is obvious that the unexhausted claims would be
procedurally barred in state court due to a state-law procedural
default, [the district court] can forego the needless 'judicial
ping-pong' and just treat those claims now barred by state law as
no basis for federal habeas relief.")(internal quotation marks
omitted).

Since Smith has not alleged, let alone demonstrated, objective
cause for the failure to properly raise the claim in the state
courts and actual prejudice resulting from the error complained of,
he cannot overcome the procedural default. <u>See</u> <u>O'Sullivan v.
Boerckel</u>, 526 U.S. 838, 848-49 (1999); <u>Coleman v. Thompson</u>, 501
U.S. 722, 750-51 (1991); <u>United States v. Frady</u>, 456 U.S. 152, 168

---

as to this subclaim of claim three. <u>See also</u> <u>United States v. Allen</u>, 16 F.3d 377,
378-79 (10 Cir. 1994)(recognizing power of both district and reviewing courts to
raise <u>sua</u> <u>sponte</u> certain nonjurisdicitonal bars in habeas cases when doing so
furthers judicial efficiency, conservation of scarce judicial resources, and
orderly and prompt administration of justice). Accordingly, Smith is being
afforded both notice and an opportunity to oppose application of the procedural
default doctrine through the filing of timely objections, eliminating the need
for further briefing at this point in the case.

[16]In Florida, issues which could be but are not raised on direct appeal may
not be the subject of a subsequent Rule 3.850 motion for postconviction relief.
<u>Kennedy v. State</u>, 547 F.2d 912 (Fla. 1989). Further, even if the subject claim
was amenable to challenge pursuant to a Rule 3.850 motion, it cannot now be
raised in a later Rule 3.850 motion because, except under limited circumstances
not present here, Florida law bars successive Rule 3.850 motions. <u>See</u>
<u>Fla.R.Crim.P.</u> 3.850(f). <u>See also</u> <u>Moore v. State</u>, 820 So.2d 199, 205 (Fla.
2002)(holding that a second or successive motion for postconviction relief can
be denied on the ground that it is an abuse of process if there is no reason for
failing to raise the issues in the previous motion).

[17]A procedural-default bar in federal court can arise in two ways: (1) when
a petitioner raises a claim in state court and the state court correctly applies
a procedural default principle of state law; or (2) when the petitioner never
raised the claim in state court, and it is obvious that the unexhausted claim
would now be procedurally barred in state court. <u>Bailey v. Nagle</u>, 172 F.3d 1299,
1302-03 (11 Cir. 1999).

(1982); <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977). Moreover, application of the bar is appropriate in this case, because Smith has not established that a fundamental miscarriage of justice will result from application of the bar. To make such a showing, the petitioner must assert and demonstrate actual innocence.[18] <u>See</u> <u>House v. Bell</u>, ____ U.S. ____, 126 S.Ct. 2064 (2006); <u>Dretke v. Haley</u>, 541 U.S. 386, 124 S.Ct. 1847 (2004). <u>See also</u> <u>Bousley v. United States</u>, 523 U.S. 614 (1998), <u>quoting</u>, <u>Schlup v. Delo</u>, 513 U.S. 298, 327-328 (1995). Accordingly, Smith is not entitled to federal habeas corpus review on the merits of ground three of this federal petition. <u>See</u> <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 848-49 (1999). <u>See also</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 750-51 (1991); <u>United States v. Frady</u>, 456 U.S. 152, 168 (1982); <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

Even if the claim were not procedurally barred from federal habeas corpus review, Smith would not be entitled to relief in that it is meritless. An autopsy report is made in the ordinary course

---

[18]The Supreme Court has recently reiterated the standard to be applied to claims of actual innocence. <u>See</u> <u>House v. Bell</u>, ___ U.S. ____, 126 S.Ct. 2064, 2077 (2006)(<u>citing</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 319-322, 324 (1995)). The Supreme Court noted that while the "standard is demanding and permits review only in the 'extraordinary' case", the <u>Schlup</u> standard does not require absolute certainty about the petitioner's guilt or innocence." <u>Id</u>. (citations omitted). Accordingly, "[a] petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt--or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." <u>Id</u>. In the habeas context, "actual innocence" means factual innocence, not mere legal insufficiency. <u>Bousley v. U.S.</u>, 523 U.S. 614, 623 (1998). The petitioner must support the actual innocence claim "with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." <u>Schlup</u>, 513 U.S. at 324. The Supreme Court emphasized that actual innocence means factual innocence, not mere legal insufficiency. <u>Id</u>. <u>See also</u> <u>High v. Head</u>, 209 F.3d 1257 (11 Cir. 2000); <u>Lee v. Kemna</u>, 213 F.3d 1037, 1039 (8 Cir. 2000); <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107 (2 Cir. 2000)(citing <u>Schlup v. Delo</u>, 513 U.S. 298, 299, (1995); <u>Jones v. United States</u>,153 F.3d 1305 (11 Cir. 1998)(holding that appellant must establish that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him). In this federal proceeding, Smith has come forward with no new reliable evidence to support any claim of actual innocence.

of business by a medical examiner who is required by law to memorialize what he or she saw and did during an autopsy. Since an autopsy report thus involves, in principal part, a careful and contemporaneous reporting of a series of steps taken and facts found by a medical examiner during an autopsy, such a report is considered a business record, and business records are expressly excluded from the reach of *Crawford*. See *Crawford*, 541 U.S. at 56 (noting that business records are not testimonial by nature); see also *United States v. Feliz*, 467 F.3d 227, 236-37 (2 Cir. 2006)(noting that autopsy reports are kept in the course of a regularly conducted business activity and are nontestimonial under *Crawford*); *Manocchio v. Moran*, 919 F.2d 770, 778 (1 Cir. 1990) (recognizing that autopsy reports are business records akin to medical records, prepared routinely and contemporaneously according to "statutorily regularized procedures and established medical standards" and "in a laboratory environment by trained individuals with specialized qualifications"). The courts have therefore held that the admission of both the routine findings recited in an autopsy report as well as the accompanying testimony of a medical examiner as to his opinion about the cause of death based upon the report who neither conducted the autopsy nor prepared the report is proper under *Crawford*.[19] See *United States v. De La Cruz*, 2008 WL 273970 (1 Cir. 2008). Thus, in this case, the Confrontation Clause

_____

[19]The practical implications that would follow from treating autopsy reports as inadmissible testimonial hearsay under *Crawford* was aptly noted by one court as follows:

> Years may pass between the performance of the autopsy and the apprehension of the perpetrator. This passage of time can easily lead to the unavailability of the examiner who prepared the autopsy report. Moreover, medical examiners who regularly perform hundreds of autopsies are unlikely to have any independent recollection of the autopsy at issue in a particular case and in testifying invariably rely entirely on the autopsy report. Unlike other forensic tests, an autopsy cannot be replicated by another pathologist. Certainly it would be against society's interests to permit the unavailability of the medical examiner who prepared the report to preclude the prosecution of a homicide case.

*People v. Durio*, 7 Misc.3d 729, 869 N.Y.S.2d 863 (N.Y.Sup.Ct. 2005).

did not prevent Dr. Hyma, who was called as a witness to establish that the final gunshot wounds to the head was the cause of death, either from testifying about the facts contained in the autopsy report prepared by Dr. Blaise or from expressing his opinion about the cause of death based upon the autopsy report.

### C. Claim Four

Smith essentially claims in his final ground for relief that he was denied due process and a fair trial when the trial court instructed the jury on the forcible felony exception to the justifiable use of deadly force when he had not been charged with a separate forcible felony (i.e., aggravated battery). Smith maintains that the trial court's instructions resulted in negating his sole defense.

Based upon the foregoing principles regarding exhaustion and procedural bar, this claim too is unexhausted and prospectively procedurally barred from federal habeas corpus review, because the claim was not presented on direct appeal as it could and should have. Smith cannot overcome the bar in that he has not demonstrated objective cause for the failure to properly raise the claim in the state courts and actual prejudice resulting from the error complained of. See O'Sullivan v. Boerckel, 526 U.S. at 848-49; Coleman v. Thompson, 501 U.S. at 750-51; United States v. Frady, 456 U.S. at 168); Wainwright v. Sykes, 433 U.S. 72. If Petitioner were to contend in this federal proceeding that he should be excused from the procedural default because the default was due to appellate counsel's failure to raise the subject claim on direct appeal, such argument would be unavailing. The claim of ineffective assistance of counsel may constitute cause for a procedural default. See Murray v. Carrier, 477 U.S. 478 (1986). See also Edwards v. Carpenter, 529 U.S. 446, 453 (2000). Smith presented his

claim of ineffective assistance of appellate counsel regarding the subject claim in the state appellate court by way of state petition for writ of habeas corpus. While Smith may have satisfied cause for the procedural default, he cannot demonstrate actual prejudice because his underlying claim lacks merit.

In Florida, the forcible felony exception to a self-defense instruction is based on Florida Standard Jury Instruction (Criminal) 3.6(f), which is predicated on Fla.Stat. §776.041(1) (West 2003).[20] This instruction may only be given in circumstances where the person claiming self-defense was engaged in another independent forcible felony at the time of the subject incident. See Barnes v. State, 2008 WL 183292, *2 (Fla. 3 DCA 2008) and cases cited therein. Review of the record reveals that trial counsel objected to all or part of the self-defense instruction given by the court, which included the forcible felony exception, but trial counsel never objected to the instruction on the specific ground now presented by Smith. See Trial Transcript at 664-68. At trial, counsel objected to the forcible felony instruction only on the basis that the evidence demonstrated that the victims were the primary aggressors, and thus the instruction was not appropriate. (Trial Transcript at 663-67). The prosecutor responded that it was in the first altercation, two hours prior to the murder, in which the victims were the aggressors, but at the second altercation, it was Smith who was the first one in front of the car with a gun and

_____

[20]The trial court instructed the jury as to the forcible felony exception to self-defense as follows:

> However, the use of force likely to cause death or great bodily harm is not justifiable if you find:
>
> 1. Ben Edward Smith was attempting to commit, committing or escaping after the commission of aggravated battery....

(Trial Transcript at 758).

had provoked the use of force.  Id. at 666. The trial court agreed with the state and included the instruction over defense objection. Id. at 666-67.

In Florida, the courts have held that to give this instruction where the defendant had not been charged with a separate forcible felony and claims self-defense is error. See Martinez v. State, 933 So. 2d 1155 (Fla. 3 DCA 2006), review granted, 959 So.2d 717 (Fla. 2007). The mere fact that the self-defense claim borders absurdity is irrelevant. See Gilchrist v. State, 938 So.2d 654, 656-57 (Fla. 4 DCA 2006); Bevan v. State, 908 So.2d 524, 525 (Fla. 2 DCA 2005); Bates v. State, 883 So.2d 907, 907-08 (Fla. 2 DCA 2004). However, while erroneous, the courts have concluded that such error is not necessarily fundamental error. Martinez, 933 So.2d 1155. Thus, under Florida law, in the absence of a contemporaneous trial objection, the complained-of instruction may be raised on appeal only if fundamental error has occurred.[21] Martinez, 933 So. 2d at 1158. For Smith to have received relief on his claim in a direct appeal proceeding, the error would therefore have had to rise to the level of fundamental error.

The Florida courts have held that the erroneous instruction does not cause fundamental error if the evidence adduced at trial does not support a self-defense instruction. See Sutton v. State, 929 So.2d 1105, 1107 (Fla. 4 DCA 2006), receded from on other grounds in Yisrael v. State, 938 So.2d 546 (Fla. 4 DCA 2006), rev.

---

[21]Fundamental error is error which "reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." State v. Delva, 575 So.2d 643, 644-45 (Fla. 1991), quoting, Brown v. State, 124 So.2d 481, 484 (Fla. 1960).

*granted,* 956 So.2d 458 (Fla. 2007); <u>Thomas v. State</u>, 918 So.2d 327, 330 (Fla. 1 DCA 2005).  Therefore, if Smith was not entitled to an instruction on self-defense as a matter of law, no fundamental error resulted.  <u>See</u> <u>Barnes v. State</u>, 969 So.2d 1117, 1118-1120 (Fla. 5 DCA 2007). The law in Florida at the time of the subject criminal incident was that before a defendant could avail himself of the defense of self-defense, he was required to establish that his life was in imminent danger and he could not safely retreat. <u>See generally</u> <u>Soberon v. State</u> 545 So.2d 490 (Fla. 3 DCA 1989)(recognizing that a person under attack has a duty to "retreat to the wall" before taking a life, and that the person must have used all reasonable means in his power, consistent with his own safety, to avoid the danger and to avert the necessity of taking human life). <u>See also</u> <u>Thomas v. State</u>, 918 So.2d at 330.[22]

Under the facts of this case, as thoroughly outlined above, Smith could not establish that his life was in imminent danger and that he could not have safely retreated. Rather, the evidence indicates that Smith was able to and obligated to walk away, rather than continue to fire. After being wounded in both legs, Nathaniel Williams threw his gun into the middle of the street and said, "All right, all right man, I give." (Trial Transcript at 528). Smith then retrieved the gun that Williams had discarded and walked

---

[22]Until October 2005, Florida required a person to retreat in most situations before deadly force could be employed. <u>See</u> §776.013, <u>Fla.Stat.</u> (2005); <u>Smiley v. State</u>, 966 So.2d 330 (Fla. 2007); <u>Jenkins v. State</u>, 942 So.2d 910, 914 (Fla. 2 DCA 2006). Florida law with regard to the duty to retreat has been materially altered by statutory amendments that became effective on October 1, 2005. <u>See</u> ch. 2005-27, §§ 1, 2, Laws of Fla. Current law now provides that

A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony.

Section 766.013(3), <u>Fla.Stat.</u>

towards the unarmed and injured Williams, reloading his gun.  Id.
at 529, 560-63. Smith then walked up to Williams and shot him three
times in the head and neck after stating that he had to kill the
victim to stop him from talking. Id. at 335-37, 529, 560-63, 614.
A self-defense instruction, although given by the trial court, was
not supported by the evidence and Florida law. Since Smith was not
entitled to a self-defense instruction as a matter of law, the
forcible felony exception instruction did not cause fundamental
error. As pointed out above, self-defense was not the sole defense
presented. He also presented a defense of voluntary intoxication.
Smith's alternate defense of voluntary intoxication was successful
in that Smith was ultimately found by the jury of the lesser
included offense of second degree murder with a firearm.

Since Smith cannot show that he received ineffective
assistance of appellate counsel as a result of appellate counsel's
failure to present the above-stated claim on direct appeal,[23] he has
not demonstrated cause to excuse him from the procedural bar. See

---

[23]The two-prong Strickland test is equally applicable in assessing
counsel's performance in appellate proceedings. See Grubbs v. Singletary, 120
F.3d 1174, 1176 (11 Cir. 1997)(applying the Strickland test to a claim of
ineffective assistance of appellate counsel). See also Matire v. Wainwright, 811
F.2d 1430, 1435 (11 Cir. 1987). The Sixth Amendment does not require appellate
attorneys to press every non-frivolous issue that the client requests to be
raised on appeal, provided that counsel uses professional judgment in deciding
not to raise those issues. Jones v. Barnes, 463 U.S. 745 (1983). In considering
the reasonableness of an attorney's decision not to raise a particular claim,
this Court must consider "all the circumstances, applying a heavy measure of
deference to counsel's judgments." Eagle v. Linahan, 279 F.3d 926, 940 (11 Cir.
2001), quoting, Strickland, 466 U.S. at 691. Further, in determining whether the
failure to raise a claim on appeal resulted in prejudice, the courts must review
the merits of the omitted claim and, if it is concluded that the omitted claim
would have had a reasonable probability of success, then counsel's performance
was necessarily prejudicial because it affected the outcome of the appeal. Eagle,
279 F.3d at 943. Under Florida law, the "failure of trial counsel to object at
trial bars appellate review." Jackson v. Dugger, 931 F.2d 712, 715 n.7 (11 Cir.
1991). The only exception to this rule is when the error constitutes a
"fundamental error." Id. For an error to be "fundamental and justify reversal
in the absence of a timely objection," it must be such that "a verdict of guilty
could not have been obtained without the assistance of the alleged error."
Porter v. Crosby, 840 So.2d 981, 984 (Fla. 2003)(internal quotation marks and
citation omitted).

Murray v. Carrier, 477 U.S. 478 (1986). In other words, Smith
would not have been successful if the subject claim had been raised
before the state appellate court, because the claim was not
properly preserved for appellate review and/or meritless.
Accordingly, ground four is barred from consideration in this
federal proceeding. United States v. Frady, 456 U.S. 152, 168
(1982); Wainwright v. Sykes, 433 U.S. 72 (1977). Further, as
indicated, Smith has not established that a fundamental miscarriage
of justice will result from not considering the forfeited claim.
See House v. Bell, ___ U.S. ___, 126 S.Ct. 2064 (2006); Dretke v.
Haley, 541 U.S. 386, 124 S.Ct. 1847 (2004). See also Bousley v.
United States, 523 U.S. 614 (1998), quoting, Schlup v. Delo, 513
U.S. 298, 327-328 (1995). Accordingly, Smith is not entitled to
federal habeas corpus review of claim four, although the claim has
effectively been reviewed on the merits. Smith cannot demonstrate
that the state court's jury instructions rendered his trial
fundamentally unfair, entitling him to federal habeas corpus
relief.[24]

## VIII. Conclusion

Based upon the foregoing, it is recommended that this petition
for habeas corpus relief be denied.

Objections to this report may be filed with the District

---

[24]"An error in instructing the jury cannot constitute a basis for habeas
relief unless the error so infected the entire trial that the resulting
conviction violates due process." Jacobs v. Singletary, 952 F.2d 1282, 1290 (11
Cir. 1992)(quotation omitted). "It is not sufficient that the instruction was
undesirable, erroneous, or even universally condemned." Id. (quotation omitted).
Consequently, alleged errors in a state court's jury instructions form no basis
for federal habeas corpus relief unless they are so prejudicial as to render the
trial fundamentally unfair. Jones v. Kemp, 794 F.2d 1536, 1540 (11 Cir.), cert.
denied, 479 U.S. 965, 107 S.Ct. 466, 93 L.Ed.2d 411 (1986); Bryan v. Wainwright,
588 F.2d 1108 (5 Cir. 1979); Pleas v. Wainwright, 441 F.2d 56 (5 Cir. 1971). A
jury charge is adequate if, viewed as a whole, it fairly and correctly states the
issues and law. United States v. Russell, 717 F.2d 518, 521 (11 Cir. 1983).

Judge within ten days of receipt of a copy of the report.

Signed this 13th day of February, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

cc:   Ben Smith, <u>Pro</u> <u>Se</u>
      DC# 422805
      Dade Correctional Institution
      19000 S.W. 377th Street
      Florida City, FL 33034-6499

      Timothy R.M. Thomas, AAG
      Department of Legal Affairs
      444 Brickell Avenue
      Suite 650
      Miami, FL 33131